# No. 11-56868 and 11-56881

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

CARTER BRYANT, et al.,

v.

MATTEL, INC., et al.

---

## APPELLEES' BRIEF

---

Appeal from Order on Motion to Intervene of the
United States District Court for the Central District of California
Case No. 2:04-cv-09049-DOC-RNB
Honorable David O. Carter, Judge Presiding

---

Michael J. Bidart #60582
Ricardo Echeverria #166049
SHERNOFF BIDART
ECHEVERRIA LLP
600 South Indian Hill Boulevard
Claremont, CA 91711
Telephone: (909) 621-4935
Facsimile: (909) 625-691

Jeffrey Isaac Ehrlich #117931
THE EHRLICH LAW FIRM
16130 Ventura Boulevard, Suite 610
Encino, CA 91436
Telephone: (818) 905-3970
Facsimile: (818) 905-3975

Attorneys for Appellees
MGA Entertainment, Inc.; MGA Entertainment (HK) Limited;
MGAE de Mexico, S.R.L. DE C.V.; and Isaac Larian

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure, Rule 26.1, the undersigned counsel for MGA Entertainment, Inc.; MGA Entertainment (HK) Limited; MGAE de Mexico, S.R.L. de C.V., states as follows:

MGA Entertainment, Inc. is a privately held corporation. There is no publicly held corporation that owns 10% or more of its stock.

MGA Entertainment (HK) Ltd. is a subsidiary of MGA Entertainment, Inc. It, too, is a privately held corporation. There is no publicly held corporation that owns 10% or more of its stock.

MGAE de Mexico, S.R.L. de C.V., is a subsidiary of MGA Entertainment, Inc. It ceased operations in 2010 and no longer is an operating concern. It, too, is a privately held corporation. There is no publicly held corporation that owns 10% or more of its stock.

Dated: June 29, 2012.          THE EHRLICH LAW FIRM

By /s/ *Jeffrey Isaac Ehrlich*
Jeffrey Isaac Ehrlich
Counsel for Appellees
MGA Entertainment, Inc.; MGA
Entertainment (HK) Limited; MGAE
de Mexico, S.R.L. de C.V.; and Isaac
Larian

# TABLE OF CONTENTS

ISSUES PRESENTED ...................................................................................1

STATEMENT OF THE CASE ........................................................................2

STATEMENT OF FACTS ..............................................................................3

    A. MGA becomes embroiled in copyright litigation with Mattel, and it has to sue the Insurers before they will fund its defense ........................3

    B. The Insurers elect to pursue reimbursement instead of subrogation..........4

    C. When MGA moves to have attorneys' fees awarded to it — not the Insurers — they make no attempt to intervene ...........................................5

    D. After the judgment awarding MGA's attorney's fees is entered and appealed, the Insurers unsuccessfully attempt to intervene .......................6

SUMMARY OF ARGUMENT .........................................................................7

ARGUMENT ..................................................................................................9

    A. The District Court lacked jurisdiction to entertain the motion to intervene because the fee award had already been appealed ....................9

    B. The District Court had discretion to deny intervention of right...............14

        1. The Insurers' motion for intervention of right was untimely .............15

        2. The Insurers' interests did not relate to the subject of the action .......19

        3. The Insurers' interests have not been practically impaired — they are being asserted by the Insurers in their pending reimbursement action ........................................................................22

    C. The District Court had discretion to deny permissive intervention .........23

        1. The Insurers' motion for permissive intervention was untimely ........24

        2. Permissive intervention would have been inappropriate because the Insurers' subrogation claim did not share a common question of law or fact with the main action.....................................................24

CONCLUSION...............................................................................................26

# TABLE OF AUTHORITIES

## Cases

*21st Century Ins. Co. v. Superior Court*
   47 Cal.4th 511 (2009).........................................................19

*Alaniz v. Tillie Lewis Foods*
   572 F.2d 657 (9th Cir. 1978)..............................................19

*Associated Gen. Contractors of California v.*
   *Sec'y of Commerce of U. S. Dept. of Commerce*
   77 F.R.D. 31 (C.D. Cal. 1977) ........................................ 11, 16, 18

*Britton v. Co-op Banking Group*
   916 F.2d 1405 (9th Cir.1990)............................................11

*Cal. Dep't of Toxic Substances Control v.*
   *Commercial Realty Projects, Inc.*
   309 F.3d 1113 (9th Cir.2002)............................................15

*Citizens for Balanced Use v. Montana Wilderness Ass'n*
   647 F.3d 893 (9th Cir. 2011)........................................ 14, 16

*Curtis v. Sears, Roebuck & Co.*
   754 F.2d 781 (8th Cir. 1985)............................................18

*Deus v. Allstate Ins. Co.*
   15 F.3d 506 (5th Cir.1994).................................................25

*Donnelly v. Glickman*
   159 F.3d 405 (9th Cir. 1998)....................................... 23, 25

*Edwards v. OSI Collection Services, Inc.*
   2006 WL 3725563 (D. Nev. 2006) ...................................12

*G & M, Inc. v. Newbern*
   488 F.2d 742 (9th Cir. 1973)............................................13

*Ghazarian v. Wheeler*
   177 F.R.D. 482 (C.D. Cal. 1997) ....................................21

*Griggs v. Provident Consumer Discount Co.*
  459 U.S. 56 (1982) ............................................................9

*International Ass'n of Bridge Local Union 75 v. Madison Industries, Inc.*
  733 F.2d 656 (9th Cir. 1984) ...........................................12

*Johnson v. San Francisco Unified School District*
  500 F.2d 349 (9th Cir. 1974) ...........................................16

*League of United Latin American Citizens v. Wilson*
  131 F.3d 1297 (9th Cir. 1997) ................................... 15, 24

*Long Beach Area Chamber of Commerce v. City of Long Beach*
  603 F.3d 684 (9th Cir. 2010) ...........................................11

*Masalosalo by Masalosalo v. Stonewall Ins. Co.*
  718 F.2d 955 (9th Cir. 1983) ...........................................12

*McDonald v. E. J. Lavino Co.*
  430 F.2d 1065 (5th Cir. 1970) ................................... 18, 21

*Natural Resources Defense Council, Inc. v. Southwest Marine Inc.*
  242 F.3d 1163 (9th Cir. 2001) ...........................................9

*Nicol v. Gulf Fleet*
  743 F2d 298 (5th Cir. 1984) ............................... 10, 11, 12

*Orange County v. Air California*
  799 F.2d 535 (9th Cir. 1986) ...........................................9

*Progressive West Ins. Co. v. Yolo County Superior Court*
  135 Cal.App.4th 263 (2005) ...........................................19

*U.S. ex rel. Shutt v. Cmty. Home & Health Care Services, Inc.*
  550 F.3d 764 (9th Cir. 2008) ...........................................12

*U.S. v. Alisal Water Corp.*
  370 F.3d 915 (9th Cir. 2004) ................................... passim

*U.S. v. Yonkers Bd. of Educ.*
  801 F.2d 593 (2d Cir. 1986) ...........................................17

*United States v. State of Wash.*
  86 F.3d 1499 (9th Cir. 1996)...............................................................15

*Williams v. Lycoming*
  2011 WL 2066742 (E.D. Cal. 2011) ............................................20

## Rules

Federal Rules of Civil Procedure, Rule 24 ........................................ 3, 14, 15, 20

## ISSUES PRESENTED

**Jurisdiction**: Once a judgment is appealed, the district court loses jurisdiction over the aspects of the case that were determined by the judgment. The judgment in this case ordered Mattel to pay $137,365,177 in attorneys' fees and costs to MGA. Once the judgment was appealed, did the district court have jurisdiction to order Mattel to instead pay some of that money directly to the Insurers?

**Timeliness**: A district court has discretion to deny intervention if the applicant's unjustified delay in bringing the motion has interfered with the orderly process of the courts. The Insurers remained silent for three months while MGA's motion for attorney's fees was pending — but moved to intervene only after the judgment awarding those fees had been entered and appealed. Did the district court abuse its discretion when it found that the Insurers' motion was untimely?

**Protectable Interest**: This Circuit has held that a creditor is not entitled to intervene in a lawsuit simply because it asserts an interest in the proceeds of the litigation. The Insurers sought to intervene solely to stake a claim for reimbursement from a portion of the funds awarded to MGA. Were the Insurers entitled to intervene?

**Practical Impairment**:  This Court has held that a prospective intervenor's interest in a lawsuit is not practically impaired if the district court has offered it alternative means to protect its interest.  In this case, when the district court denied the Insurers' motion for intervention, it invited them to proceed with a separate reimbursement action — which is now pending.  Has the Insurers' inability to intervene practically impaired their interest in recouping the funds they paid to MGA?

**Common Question**:  To qualify for permissive intervention, an applicant must demonstrate that its claim shares a question of fact or law with the main action.  The Insurers contend that after the underlying judgment was appealed the district court retained jurisdiction to consider their motion for intervention because the issues it raised were unrelated to the main action.  If that were true, could the Insurers qualify for permissive intervention?

## STATEMENT OF THE CASE

This is an appeal from the denial of a motion to intervene.  The would-be intervenors — National Union Fire Insurance Company of Pittsburg, Lexington Insurance Company, Chartis Specialty Insurance Company, and Crum & Forster Specialty Insurance Company (collectively the "Insurers") — are insurance companies that funded the defense of MGA Entertainment, Inc. and Isaac Larian (collectively "MGA") in a protracted copyright and trade-secrets lawsuit with Mattel.

Throughout the course of the lawsuit, the Insurers elected not to intervene and assert their subrogation rights. After MGA obtained a verdict in its favor, it moved for an award of attorneys' fees to it — not the Insurers — and they still did not intervene. After MGA's motion had been pending for roughly four months, the District Court awarded it the fees it requested and entered final judgment in the case. The judgment was appealed, and then two weeks later, the Insurers filed a motion for intervention of right and permissive intervention under Rule 24 of the Federal Rules of Civil Procedure ("Rule 24"). The District Court denied the motion on the grounds that the Insurers' motion was untimely and that it shared no common questions with the main action.

## STATEMENT OF FACTS

### A.    MGA becomes embroiled in copyright litigation with Mattel, and it has to sue the Insurers before they will fund its defense

By introducing the wildly successful line of "Bratz" dolls, MGA became the first company in 50 years to surpass Mattel in the fashion-doll market. (Tab 4, ER 44.) Mattel attempted to regain its dominance with this litigation, in which it claimed that the Bratz dolls infringed on its copyrighted sketches and sculpts for a line of dolls that featured trendy clothes and a bratty attitude. (Tab 4, ER 31-33.) It sought over $1 billion in damages and an injunction prohibiting MGA from selling "Bratz" or similar dolls. (*Id*.)

- 3 -

While MGA resisted its corporate rival's attempt to put it out of business, it submitted invoices from its attorneys to the Insurers because Mattel's claims arose from conduct that allegedly occurred during periods covered by the Insurers' various policies. (Tab 2, ER 9.) The carriers initially refused to pay these bills, so MGA was forced to sue them for breach of contract and insurance bad faith. (Tab 2, ER 9-10.) Once MGA obtained summary judgment that the policies covered its legal fees, the Insurers relented and began funding MGA's defense, subject to a reservation of rights. (Tab 2, ER 9; Tab 8, ER 50; Tab 9, ER 53.)

### B. The Insurers elect to pursue reimbursement instead of subrogation

The Insurers' policies all contain provisions reserving their rights to obtain compensation for payments made to the insured. (Tab 10, ER 57-61.)

Although the titles of those clauses vary between the 2001 National Union and 2002 Chartis Specialty policies, they contain the same language — which does not differentiate between the methods for recouping payments. The provisions state:

> If any insured has rights to recover all or part of any payment we
> have made under this policy, those rights are transferred to us….
> The Insured must do nothing after loss to impair these rights and
> must help us enforce them. (Tab 10, ER 59-60.)

The policies issued by Lexington and Crum & Forster also reserve the carriers' rights to recoup these payments, but they acknowledge that the carrier can choose *either* to allow the insured to pursue recovery and then seek repayment (i.e., "reimbursement") *or* to step into the insured's shoes and directly file suit (i.e., "subrogation"). (Tab 10, ER 58, 61.) Each policy states:

> 8. Transfer Of Rights Of Recovery Against Others To Us
>
> If the insured has rights to recover all or part of any payment we have made under this Policy, those rights are transferred to us. The insured must do nothing after loss to impair them. *At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.* (*Id.*, emphasis added.)

Throughout MGA's prolonged legal battle with Mattel, the Insurers were content with the first option — reimbursement — and made no attempt to step into MGA's shoes and pursue a direct recovery from Mattel. (Tab 2, ER 10-11.)

## C. When MGA moves to have attorneys' fees awarded to it — not the Insurers — they make no attempt to intervene

On April 21, 2011, a jury returned a verdict against Mattel on its claim for copyright infringement and for MGA on its claim for trade-secret misappropriation. (Tab 2, ER 9.) On May 5 and 6, MGA filed motions for attorneys' fees and costs based on the Copyright Act and the California

- 5 -

Uniform Trade Secrets Act.  (Tab 22, ER 1047, Dkt. 10539 and 10542.)  MGA requested that the District Court award these fees and costs to it — not to the Insurers — and the Insurers did nothing to interfere.  (Tab 2, ER 10-11.)

The court held hearings on the party's post-trial motions from May 25-27.  MGA's requests for attorneys' fees remained pending for over two months after the hearing, but the Insurers showed no interest in intervening.  (Tab 2, ER 9-11.)  On August 4, the court awarded MGA $105,688,073 in fees and $31,677,104 in costs under the Copyright Act and $2,172,000 in fees and $350,000 in costs under California's trade-secrets act.  (Tab 3, ER 28; Tab 4, ER 44.)  The same day, a final judgment was entered that disposed of all issues in the case — including MGA's rights to compensatory damages, exemplary damages, attorneys' fees, and costs.  (Tab 5, ER 45-46.)  Mattel filed its notice of appeal from the judgment on August 11.  (Tab 22, ER 1060, Dkt. 10707.)

### D. After the judgment awarding MGA's attorney's fees is entered and appealed, the Insurers unsuccessfully attempt to intervene

The Insurers moved to intervene on August 26, 2011 — more than two weeks after the judgment was appealed.  (Tab 7, ER 48A.)  According to their complaint in intervention, they sought "to recover from Mattel in subrogation and/or from MGA in reimbursement" for the payments they made while funding MGA's defense.  (Tab 10, ER 64.)  They contended that the District Court retained jurisdiction to address that issue because "the issue of allocation

of attorneys' fees among those who paid them . . . is separate from the disposition of the merits of the . . . claims, which Mattel has now appealed." (Tab 7, ER 48B.)

The court denied intervention, holding that (1) the Insurers' motion was untimely because it was filed post-judgment, with an appeal pending; and (2) the Insurers' remaining claims involved reimbursement — not subrogation — and would properly be addressed in a separate action . (Tab 1, ER 5-6.)

## SUMMARY OF ARGUMENT

The District Court had not just the discretion — but indeed the obligation — to deny the Insurers' motion.

First, the court did not have jurisdiction to consider the motion because it was filed after the notice of appeal. The Insurers' argue that the court retained jurisdiction over issues that were "collateral" to the main action. This ignores that the existing judgment awarded 100% of the attorneys' fees to MGA. As intervenors, the Insurers were specifically attempting to have the District Court substantively amend that portion of the judgment — even though it was pending in this Court.

Second, even if the District Court retained jurisdiction to grant the motion, it also had the discretion to deny as untimely. If the Insurers wanted to directly recover a portion of the attorneys' fees from Mattel instead of pursuing

reimbursement from MGA, then they were required to take some action during the months that MGA's attorneys' fee motion was outstanding. Their justifications for waiting so long wrongly presuppose that they could only move to intervene once they suffered actual, concrete harm. The rule is actually the opposite.

Third, the Insurers' financial interest in obtaining reimbursement from MGA was not related to the subject matter of the litigation in the manner that this Circuit requires for intervention of right. The Insurers rely on Fifth Circuit precedent allowing an insurer to intervene to stake its claim to the proceeds of its policyholder's lawsuit against a third-party tortfeasor. But this Court has expressly rejected that line of authority because it creates a slippery slope for numerous creditors to intervene, transforming all lawsuits into collections vehicles.

Finally, the Insurers did not qualify for permissive intervention because the factual questions underlying their reimbursement claims are wholly dissimilar from the copyright dispute involved in the main action. In fact, that is the very argument that the Insurers themselves have made to rationalize how the District Court could retain jurisdiction over their reimbursement claims even though the judgment in the underlying suit was on appeal. The Insurers

should not be permitted to bootstrap a new lawsuit involving completely separate factual questions onto this long-running lawsuit just as it concludes.

## STANDARD OF REVIEW

Whether the filing of the notice of appeal divested the district court of jurisdiction to grant the requested relief is a legal issue, which this Court reviews de novo. *Natural Resources Defense Council, Inc. v. Southwest Marine Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001). The district court's ruling on a motion for intervention of right is also reviewed de novo — except for the question of whether the motion was timely filed, which is reviewed for abuse of discretion. *U.S. v. Alisal Water Corp.*, 370 F.3d 915, 918-919 (9th Cir. 2004). Permissive intervention is committed to the broad discretion of the district court and is therefore reviewed for abuse of discretion. *Orange County v. Air California*, 799 F.2d 535, 539 (9th Cir. 1986).

## ARGUMENT

### A. The District Court lacked jurisdiction to entertain the motion to intervene because the fee award had already been appealed

"The filing of a notice of appeal is an event of jurisdictional significance — it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). The judgment in this case determined the entire action, and specifically awarded attorneys' fees to MGA. (Tab 5, ER 45-46.) Once the judgment was appealed, the District

Court no longer had jurisdiction to allow an intervenor to assert that the judgment should instead have awarded it a portion of those fees.

This situation resembles that in a seminal case regarding a district court's jurisdiction to permit intervention after a notice of appeal has been filed — *Nicol v. Gulf Fleet,* 743 F.2d 298, 299 (5th Cir. 1984). There, the former attorneys of the plaintiff in an admiralty action sought to intervene after judgment in order to protect their alleged fee interest in the case, but the plaintiff filed a notice of appeal before the court ruled on the motion. The Fifth Circuit held that the district court had no jurisdiction to rule on the motion. It explained:

> If an appeal is taken from a judgment which determines the entire action, the district court loses power to take any further action in the proceeding upon the filing of a timely and effective notice of appeal, except in aid of the appeal or to correct clerical errors under Rule 60(a). 9 J. Moore & B. Ward, *Moore's Federal Practice* ¶ 203.11 at 3-54 (1983). That is the general rule in this Circuit, and it has been applied to motions for intervention. *Avoyelles Sportsmen's League, Inc. v. Marsh,* 715 F.2d 897, 928-929. Accordingly, the district court in this case was without

jurisdiction to rule on the motion to intervene filed by Hammett,

Leake & Hammett once Nicol had filed his notice of appeal. *Id.*

The Ninth Circuit has not directly addressed the issue presented in *Nicol*. But a California district court has considered the question and independently adopted the same rule as the *Nicol* court. *See Associated Gen. Contractors of California v. Sec'y of Commerce of U. S. Dept. of Commerce*, 77 F.R.D. 31, 35-36 (C.D. Cal. 1977). ("*Associated General Contractors*").

The Insurers contend that the District Court retained jurisdiction to consider their motion because it involved an issue that was "collateral" to the appeal. (AOB at 37-38.) It is true that "where an appeal is taken from a judgment which does not finally determine the entire action, the appeal does not prevent the district court from proceeding with matters not involved in the appeal." *Long Beach Area Chamber of Commerce v. City of Long Beach,* 603 F.3d 684, 691 (9th Cir. 2010), quoting *Britton v. Co-op Banking Group,* 916 F.2d 1405, 1411 (9th Cir. 1990). The three cases that the Insurers rely on involve straightforward application of that rule.

Two of them held that a notice of appeal from a merits judgment that does not address attorneys' fees cannot divest the district court of jurisdiction over the latter issue. *See Masalosalo by Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 957 (9th Cir. 1983); *International Ass'n of Bridge Local Union*

*75 v. Madison Industries, Inc.,* 733 F.2d 656, 659 (9th Cir. 1984).[1]  The third

case — *U.S. ex rel. Shutt v. Cmty. Home & Health Care Services, Inc.*, 550 F.3d

764, 767 (9th Cir. 2008) — holds that a district court can decide the merits of

an action under the False Claims Act while retaining jurisdiction over the

allocation of the award between the United States and a *qui tam* relator.

This case fundamentally differs because, as in *Nicol*, the appeal was

taken from a judgment that decided the entire action — not one that reserved

some further issue for resolution in the district court.  If the judgment had

specified that Mattel was liable for attorneys' fees but reserved the question of

how those funds should be allocated between MGA and the Insurers, then this

case might be comparable to *Shutt*.  But the Insurers never asserted their

subrogation rights, so the District Court awarded all of the fees to MGA as part

of the judgment that was appealed.

The Insurers now seek to have a portion of those fees awarded to them

instead of MGA.  They maintain that the District Court retained jurisdiction to

decide that issue because it is not involved in the appeal from the judgment.

But an issue that would have substantively affected a judgment does not

---

[1] The general rule that attorneys' fees are "collateral" to an appeal from the
merits finds no application when the appeal is taken from a judgment that also
includes the fee award.  *Edwards v. OSI Collection Services, Inc.*, 2006
WL 3725563, *1 (D. Nev. 2006).  A fee award obviously cannot be collateral to
itself.

become "collateral" to an appeal simply because a party neglected to raise it on time.

This Court addressed that situation in *G & M, Inc. v. Newbern*, 488 F.2d 742, 746-747 (9th Cir. 1973), in which a plaintiff sought cost-of-proof reimbursement under Rule 37(c) after the judgment in its favor had already been appealed. Like the Insurers in this case, the plaintiff argued that the district court retained jurisdiction because that issue was "not involved" in the appeal. This Court was not impressed. In its words, "The issue of reimbursement of expenses is not 'involved' in this appeal only because plaintiff failed to raise the issue in a timely fashion." *Id.* It concluded that the district court had no jurisdiction to consider the motion once the notice of appeal was filed:

> [T]he order is one which could have been made before judgment
> and notice of appeal, had G & M chosen to make its motion
> sooner. The fact that the motion is a belated one does not give
> the court jurisdiction to entertain it once jurisdiction of the case
> has passed to this court. *Id.*

Like the plaintiff in *G & M*, the Insurers could have moved to intervene before judgment and notice of appeal; the only reason their subrogation rights

were not directly involved in the appeal was their own failure to assert them.[2]

The District Court's lack of jurisdiction to grant them the relief they sought is even more evident than in *G & M*, because here the original judgment did not simply omit something that the Insurers belatedly ask to have added. Rather, the judgment was affirmatively inconsistent with the Insurers' claim to a portion of the attorneys' fees because it awarded 100% of those funds to MGA. It would have been clear error for the District Court to substantively redraft the judgment while it was pending on appeal.

### B. The District Court had discretion to deny intervention of right

In order to qualify for intervention of right under Rule 24(a)(2), the Insurers had to demonstrate: (1) that their application was timely; (2) that they had a significant protectable interest in the subject of the action; (3) that, as a practical matter, disposition of the action may impede their ability to protect their interests; and (4) that the existing parties may not adequately represent their interests. *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). The Insurers failed to satisfy the first three requirements.

---

[2] The Insurers suggest that it was impossible for them to file their motion to intervene before the notice of appeal because of a local rule requiring a party to meet and confer at least ten days before filing a motion. (AOB at 36, fn. 7.) This ignores that the Insurers failed to intervene during the months preceding the judgment.

1. **The Insurers' motion for intervention of right was untimely**

"Timeliness is 'the threshold requirement' for intervention as of right."

*League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1302

(9th Cir. 1997). "If the court finds that the motion to intervene was not timely,

it need not reach any of the remaining elements of Rule 24." *United States v.*

*State of Wash.*, 86 F.3d 1499, 1503 (9th Cir. 1996).

"Timeliness is a flexible concept; its determination is left to the district

court's discretion." *United States v. Alisal Water Corp.*, 370 F.3d at p. 921. To

abuse that discretion, a district court must base its decision on a clearly

erroneous finding of fact or employ the wrong legal standard. *Id*.

When applying the correct legal standard, the district court determines

timeliness based on: "(1) the stage of the proceeding at which an applicant

seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and

length of the delay." *Id*., quoting *Cal. Dep't of Toxic Substances Control v.*

*Commercial Realty Projects, Inc*., 309 F.3d 1113, 1119 (9th Cir. 2002). The

court "must bear in mind that 'any substantial lapse of time weighs heavily

against intervention.'" *League of United Latin American Citizens v. Wilson*,

131 F.3d at p.1302, quoting *United States v. State of Wash.*, 86 F.3d at p. 1503.

And it should consider "prejudice not only to the original parties' substantive

legal rights, but also to their right to proceed without delay." *Associated*

*General Contractors*, 77 F.R.D. at pp. 38-39, citing, *Johnson v. San Francisco Unified School District*, 500 F.2d 349, 354 (9th Cir. 1974).

Here, the District Court acted well within its discretion by finding that the Insurers' application for intervention was untimely because: (1) they only filed their motion after judgment had already been entered and appealed; (2) considering the reimbursement claims would have unduly prolonged the litigation, to the detriment of the original parties; and (3) the insurers should have been aware throughout the litigation that MGA was not pursuing a fee award on their behalf and they offered no valid explanation for why they waited to seek intervention until almost four months after MGA filed its attorneys' fees motions. (Tab 1, ER 5-6.)

The Insurers insist that it was proper for them to wait to file their motion until the District Court awarded attorneys' fees to MGA because that was the first time that they qualified for intervention of right. (AOB at 20.) They contend that as long as a possibility existed that the District Court would deny MGA's requests for attorneys' fees, their interest in the litigation was too speculative to permit intervention. But there was no reason that the Insurers' had to wait until their rights were *actually* imperiled before attempting to intervene. "[I]ntervention of right does not require an absolute certainty that a party's interests will be impaired." *Citizens for Balanced Use v. Montana*

*Wilderness Ass'n*, 647 F.3d 893, 900-901 (9th Cir. 2011). A party need only demonstrate that its interest "may" be "threatened." *Id.* Any interests the Insurers had in recovering attorneys' fees directly from Mattel were foreseeably threatened once MGA requested that the District Court instead award those fees to it.

The Insurers' position that they had no ability to intervene while the attorneys' fee motions were pending is analogous to an argument advanced by homeowners who belatedly sought to intervene to prevent subsidized-housing projects from being built near their properties in *U.S. v. Yonkers Bd. of Educ.,* 801 F.2d 593, 596-597 (2d Cir. 1986). The homeowners contended that they could not have intervened until the order designating the sites near their homes was filed, because prior to that their interests in the litigation were "only speculative." *Id.* The Second Circuit rejected that argument, holding that the homeowners should have intervened months earlier when they were aware of the outstanding order's "possible ramifications." *Id.* at p. 597, fn. 7. It explained that once the proposals for the project's sites were announced, the homeowners had a "basis for concern" and that they were not entitled to wait until their alleged interests were already compromised. *Id.* at p. 597.

In an attempt to justify their actions, the Insurers rely on the Fifth Circuit's decision in *McDonald v. E. J. Lavino Co.,* 430 F.2d 1065, 1071

(5th Cir. 1970) ("*McDonald*"), which allowed the insurers to intervene post-judgment in order to assert a subrogation claim to a portion of the funds paid into the registry of the court pursuant to a settlement between its insured and a third-party tortfeasor.

*McDonald* is distinguishable from the present case because there, the insurer intervened just one day after judgment was entered; here, the Insurers waited three weeks. *See Associated General Contractors*, 77 F.R.D. at p. 39 [motion to intervene was filed two weeks after judgment, so *McDonald* was distinguishable]. That distinction is particularly significant because it means that the motion to intervene in this case post-dated not only the entry of judgment, but also the notice of appeal.

More importantly, the *McDonald* decision was expressly based on "the special nature of a motion to intervene for the limited purpose of asserting a subrogation interest in a fund paid into the registry of the court." *McDonald*, 430 F.2d at p. 1065*; See also Curtis v. Sears, Roebuck & Co.,* 754 F.2d 781, 784 (8th Cir. 1985) [recognizing that *McDonald*'s analysis of post-judgment intervention was premised on money being paid into the court's registry].

In *McDonald*, the allocation of the funds paid into the court's registry had not yet been determined, so by intervening to stake a claim to a portion of those funds, the insured "could not have interfered substantially with the

orderly processes of the court." *McDonald*, 430 F.2d at p. 1072. Here, the attorneys' fee award was not to be paid into the District Court's registry. There was no undistributed fund whose allocation had not yet been decided. The court had already ordered that all of the fees should be paid to MGA. The motion to intervene would have required the court to reopen an issue it had already determined (i.e., the allocation of the fee award), which weighed heavily against intervention. *Alaniz v. Tillie Lewis Foods,* 572 F.2d 657, 659, fn. 2 (9th Cir. 1978).

### 2. The Insurers' interests did not relate to the subject of the action

Although the terms "subrogation" and "reimbursement" are often used interchangeably, they are actually distinct concepts. "Subrogation refers to the right of the insurance company to step into the shoes of the insured and assert the insured's rights against the third party. . . . Reimbursement refers to the right to receive payment back of what has been expended by the insurance company." *Progressive West Ins. Co. v. Yolo County Superior Court,* 135 Cal.App.4th 263, 273 (2005), cited with approval by, *21st Century Ins. Co. v. Superior Court,* 47 Cal.4th 511, 518 (2009).[3]

---

[3] Although the concepts are often confused, the difference between them can have important implications under California law. *See 21st Century Ins. Co. v. Superior Court*, 47 Cal.4th at p. 518 [holding that med-pay insurers cannot intervene in their policyholders' suits against tortfeasors because they are only entitled to reimbursement — not subrogation].

Because an insurer exercising its subrogation rights directly steps into the role of its insured against a third party, it obviously will have an adequate interest in the subject matter between the insured and the third party to warrant intervention of right. *See Williams v. Lycoming*, 2011 WL 2066742, *2 (E.D. Cal. 2011). But here, the Insurers waited until their insured had already succeeded in obtaining an award of attorneys' fees, and then they attempted to assert a claim for a portion of that award. (Tab 1, E.R. 5 [explaining that the insurers made no attempt to "'step into the shoes' of MGA" and assert its claims for fees.][4] Their motion to intervene was therefore substantively an attempt for reimbursement — not subrogation.

That is not an adequate basis for intervention of right. This Court has specifically held that "the prospective collectability of a debt" is not a protectable interest for Rule 24 purposes because it is not related to the subject matter of the underlying litigation. *U.S. v. Alisal Water Corp*, 370 F.3d at pp. 919-921. "To hold otherwise would create an open invitation for virtually any creditor of a defendant to intervene in a lawsuit where damages might be awarded." (*Id.*)

---

[4] The Insurers admitted as much in their motion, stating, "Intervenors . . . seek . . . only the opportunity to represent their position where MGA has declined to *and claim reimbursement for fees that Intervenors have paid*. (Tab 7, E.R. 48B, emphasis added.)

It is true that in *McDonald*, the Fifth Circuit held that an insurer's right to recoup payments it made to its insured entitled it to intervene in the insured's suit against a third-party tortfeasor. *See McDonald*, 430 F.2d at p. 1065. At one point, that approach appeared to be making inroads in this circuit; a California district court relied on *McDonald* to hold that a hospital could intervene to assert its statutory lien interest in the proceeds of a lawsuit. *See Ghazarian v. Wheeler,* 177 F.R.D. 482, 486-487 (C.D. Cal. 1997). But this Court has refused to adopt that rule.

In *U.S. v. Alisal Water Corp.*, 370 F.3d at p. 920, fn. 3, the Court recognized that both the Fifth Circuit and the California district court had "suggested that an interest in property that is impacted by litigation may trigger a right to intervention." *Id*. But it made it clear that this is not the law in this Circuit, stating:

> We decline . . . to follow this approach. A mere interest in property that may be impacted by litigation is not a passport to participate in the litigation itself. To hold otherwise would create a slippery slope where anyone with an interest in the property of a party to a lawsuit could bootstrap that stake into an interest in the litigation itself. *Id*.

That is exactly what the Insurers are attempting to accomplish here. When it suits them, they have candidly admitted that the merits of their

reimbursement claim are completely unrelated to the actual subject matter of this lawsuit. (Tab 7, ER 48B.) Their interest in obtaining reimbursement out of the proceeds of the litigation does not entitle them to transform this case into what amounts to an interpleader action.

### 3. The Insurers' interests have not been practically impaired — they are being asserted by the Insurers in their pending reimbursement action

The Insurers assert that the District Court "went beyond the issue of intervention and affirmatively held that the Insurers are precluded from pursuing a subrogation claim in any forum." (AOB at 33.) This suggestion is misleading, at best. The court's denial of the motion to intervene necessarily precludes them from pursuing subrogation because that procedure requires an insurer to step into the shoes of its insured against a third party. Once Mattel pays it the entire fee award, MGA will no longer retain any rights against Mattel, so the Insurers will not have any cause of action against Mattel — even if they attempt to somehow step into MGA's shoes in another forum.

But the District Court expressly recognized that the Insurers will be able to pursue their rights to reimbursement from MGA in a separate lawsuit. (Tab 1, ER 5-6.) Indeed, they are currently doing just that.[5]

---

[5] On June 13, 2012, the Insurers filed a complaint for reimbursement, declaratory relief, and unjust enrichment in an action titled *National Union Fire Insurance Company, et al. v. MGA Entertainment, Inc. et al.*, Case No. SACV12-00943 (C.D. Cal.).

The Insurers have protested that intervention is necessary because otherwise MGA could potentially dissipate the award before satisfying its reimbursement obligation. But the District Court's order explained that it retains no power to mitigate that risk in this lawsuit. It cannot modify the existing judgment that awards the fees to MGA, and a new order compelling MGA to reimburse the Insurers will do nothing to prevent it from diverting the funds for other purposes. (Tab 1, ER 5-6.)

Thus, for all intents and purposes, the Insurers' are just as well situated to protect their reimbursement interests in their separate action as they would be as intervenors in this case. Because the Insurers have other means to protect them, those interests have not been "practically impaired" in the sense required to justify intervention of right. *See U.S. v. Alisal Water Corp.*, 370 F.3d at p. 921.

## C. The District Court had discretion to deny permissive intervention

"An applicant who seeks permissive intervention must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Id.* Here, the Insurers failed to satisfy the first two

requirements, so the District Court acted well within its discretion when it denied their motion.

### 1.   The Insurers' motion for permissive intervention was untimely

MGA has already explained, *supra*, why the Insurers' motion for intervention of right was untimely.  The timeliness of a motion for permissive intervention is determined based on the same three factors — but they are analyzed more strictly.  *League of United Latin American Citizens v. Wilson*, 131 F.3d at p. 1308.  *A fortiori*, the fact that the motion for intervention of right was untimely also precludes permissive intervention.  *Id*.  At minimum, the District Court had discretion to hold that permissive intervention would "unduly prolong this litigation" by requiring it to be reopened while it was on appeal. (Tab 1, ER 6.)

### 2.   Permissive intervention would have been inappropriate because the Insurers' subrogation claim did not share a common question of law or fact with the main action

The District Court correctly recognized that the Insurers' reimbursement claim had only a "strained relation to the core issues in this case: the alleged infringement of creative works that Mattel claimed to own."  (Tab 1, ER 6.) The Insurers' only response is that the fees and costs that they paid MGA "are the *same* fees and costs that MGA sought to recover from Mattel."  (AOB at 32,

original emphasis.)  They appear to believe that two claims must share a factual question simply because they arise from related transactions.

That is demonstrably untrue.  The Insurers' rights to reimbursement at this juncture hinge entirely on issues that have no relevance to the underlying copyright dispute between MGA and Mattel.  Simply put, the claims "share no common factual proof."  *Donnelly v. Glickman,* 159 F.3d at p. 412.  In fact, when attempting to establish the District Court's jurisdiction to consider their complaint in intervention, the Insurers have specifically argued that it arises from completely separate factual predicates from the main action.  (Tab 7, ER 48B.)

To the extent that the dispute between Mattel and MGA implicates the issue of attorneys' fees, it involves only whether the District Court permissibly awarded fees under the Copyright Act and whether it correctly calculated the amount of such fees.  The dispute has nothing to do with the Insurers' alleged right vis-a-vis MGA to collect such fees. As a result, granting the Insurers' motion would do violence to the rule that intervention is "not intended to allow the creation of whole new lawsuits by the intervenors."  *Id.*, quoting, *Deus v. Allstate Ins. Co.,* 15 F.3d 506, 525 (5th Cir. 1994).

## CONCLUSION

The District Court had no jurisdiction to consider the motion to intervene and the Insurers failed to qualify for either intervention of right or permissive intervention. This Court should therefore affirm the District Court's order denying the Insurers' motion to intervene.

Dated: June 29, 2012.      Respectfully submitted,

SHERNOFF BIDART
ECHEVERRIA LLP

THE EHRLICH LAW FIRM

By /s/ *Jeffrey Isaac Ehrlich*
    Jeffrey Isaac Ehrlich
    Counsel for Appellees
    MGA Entertainment, Inc.; MGA
    Entertainment (HK) Limited; MGAE
    de Mexico, S.R.L. de C.V.; and Isaac
    Larian

## STATEMENT OF RELATED CASES

Appellees are unaware of any related cases within the meaning of Ninth

Circuit Rule 28-2.6, other than the case identified by Appellants.

Dated:  June 29, 2012.          Respectfully submitted,

SHERNOFF BIDART
ECHEVERRIA LLP

THE EHRLICH LAW FIRM

By /s/ *Jeffrey Isaac Ehrlich*
  Jeffrey Isaac Ehrlich
  Counsel for Appellees
  MGA Entertainment, Inc.; MGA
  Entertainment (HK) Limited; MGAE
  de Mexico, S.R.L. de C.V.; and Isaac
  Larian

## CERTIFICATE OF COMPLIANCE
### (Fed. R. App. P. 32(a)(7)(C) and Circuit Rule 32-1)

I certify that, in accordance with Fed. R. App. P. 32 (a)(5) and (a)(6), the appellees' brief is proportionally spaced and has a typeface of 14 points in Times New Roman, and that it comports with all other type style requirements delineated in Rule Fed. R. App. P. 32(a)(6).

According to the word count feature in the Microsoft Word software used to prepare the brief, excluding portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), it contains 5,914 words, including footnotes. This brief therefore complies with the 14,000-word type-volume limit established by Fed. R. App. P. 32(a)(7)(B).

/s/ *Jeffrey Isaac Ehrlich*
Jeffrey Isaac Ehrlich

Re: *Bryant v. Mattell, et al.*
Ninth Circuit No. 11-56868 and 11-56881
USDC Case No.:  2:04-cv-09049-DOC-RNB

## CERTIFICATE OF SERVICE

I hereby certify that on **June 29, 2012**, I electronically filed the foregoing document entitled **APPELLEES' BRIEF** with the United States Court of Appeals for the Ninth Circuit.  Notice will automatically be electronically emailed to the following individuals on the Court's Service List, who are registered with the Court's CM/ECF System:

Ryan Geoffrey Baker
rbaker@bakermarquart.com
BAKER MARQUART LLP
10990 Wilshire Boulevard
Los Angeles, CA 90024

Alexander Cote
acote@scheperkim.com
SCHEPER KIM & HARRIS LLP
601 West Fifth Street, 12th Floor
Los Angeles, CA 90071-2025

Jason D. Russell
jrussell@skadden.com
Thomas Jerome Nolan
thomas.nolan@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, 34th Floor
Los Angeles, CA 90071-3144

Jennifer Lynn Keller
keller@krlawllp.com
KELLER RACKAUCKAS LLP
18500 Von Karman Avenue, Suite 560
Irvine, CA 92612

Kathleen M. Sullivan
kathleensullivan@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010

Jennifer M. Kokes
j.kokes@mpglaw.com
Susan J. Field
s.field@mpglaw.com
MUSICK PEELER & GARRETT, LLP
One Wilshire Boulevard, Suite 2000
Los Angeles, CA 90017

Michael Thomas Zeller
michaelzeller@quinnemanuel.com
Susan Rachel Estrich
susanestrich@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

Mark Eric Overland
mark@overlaw.net
LAW OFFICES OF MARK E. OVERLAND
100 Wilshire Boulevard, Suite 950
Santa Monica, CA 90401

Michael J. Bidart
mbidart@sbdelaw.com
Ricardo Echeverria
recheverria@sbdelaw.com
SHERNOFF BIDART ECHEVERRIA LLP
600 South Indian Hill Boulevard
Claremont, CA 91711-5498

Peter N. Villar
peter.villar@bingham.com
Todd E. Gordinier
todd.gordinier@bingham.com
BINGHAM MCCUTCHEN LLP
600 Anton Boulevard, 18th Floor
Costa Mesa, CA 92626-1924

Suzanne Stouder
Suzanne.stouder@dbr.com
DRINKER BIDDLE & REATH, LLP
1800 Century Park East, Suite 1400
Los Angeles, CA 90067

Mark Christopher Errico
merrico@pattonboggs.com
PATTON BOGGS LLP
One Riverfront Plaza, 6th Floor
Newark, NJ 07102

Further, pursuant to the Court's Service List, the following individuals are not currently registered with the CM/ECF Filing system; service has therefore been made by first-class U.S. mail, as follows:

John B. Quinn
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017

Mark D. Sheridan
PATTON BOGGS LLP
One Riverfront Plaza, 6th Floor
Newark, NJ 07102

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on **June 29, 2012,** at Claremont, California.

/s/ *Isabel Cisneros-Drake*
Isabel Cisneros-Drake